**Affirmed and Majority and Concurring and Dissenting Opinions filed August 21, 2025.**



**In The**

# Fifteenth Court of Appeals

---

### NO. 15-25-00004-CV

---

## CURADEV PHARMA PVT. LTD. AND CURADEV PHARMA LIMITED, Appellants

### V.

## THE UNIVERSITY OF TEXAS SOUTHWESTERN MEDICAL CENTER, DR. XIAOCHEN BAI, AND DR. XUEWU ZHANG, Appellees

---

**On Appeal from the 101st District Court**
**Dallas County, Texas**
**Trial Court Cause No. DC-24-03875**

---

### CONCURRING AND DISSENTING OPINION

The Court misreads Texas law to override the Takings Clause in the Bill of Rights solely because a government unit had a contract with some unrelated third party. When the government takes money or property belonging to *A* pursuant to a contract the government has with *A*, I agree there is no taking; Chapter 2260 of the Texas Government Code provides an *exclusive* administrative remedy for A that

cannot be skipped by pleading a takings claim.[1] But things are different when the government takes money or property *belonging to B* pursuant to a contract the government has *with A*. If the government has "taken, damaged, or destroyed" *B's property* for public use, it is no excuse that "*A agreed* we could do it." In the former case, the government has no intent to exercise eminent domain since it has contract rights to exercise directly against the owner; but in the latter case, it can only have exercised eminent domain to take property since it has no contract or contractual rights with the actual owner.

In this case, there were no contracts or contract rights between UT's Southwestern Medical Center and the Curadev parties; each had a contract with Takeda, but neither was aware of Takeda's contract with the other. But it does not matter whether Southwestern thought no one else had a property interest in the intellectual property here; "perhaps we were mistaken about our contract rights" is no excuse for failing to pay compensation if in fact it took another's private property. Under the plain terms of the Texas Constitution's ancient and venerable Takings Clause, if Curadev can prove what it alleges (which remains to be seen), the courts have jurisdiction to adjudicate its takings claim against the Southwestern parties.

A single case issued by the Texas Supreme Court little more than a year ago explains in detail where the Court goes wrong here. In *Texas Department of Transportation v. Self*, the State held a right-of-way easement (i.e., a contract) across property owned by the Selfs, but intentionally cut down 20 large trees that were wholly or partly on the Selfs' property due to a mistaken belief about the location of the easement's boundary line.[2] The Court held that despite TxDOT's good faith but erroneous belief that it was exercising its own contract rights, the Selfs had alleged

---

[1]     *See* TEX. GOV'T CODE § 2260.005.

[2]     690 S.W.3d 12, 17–18 (Tex. 2024).

a viable takings claim.[3] The claim was viable even if TxDOT did not have "any inkling that it was damaging the Selfs' trees," because the elements of a takings claim do not "demand proof that TxDOT acted in bad faith," or "subjective awareness that it had no legal right to cut down" the trees.[4]

The Court says *Self* does not support Curadev's claim here by focusing solely on a single sentence in that opinion: "no compensation is owed when the government acts on its rights under a contract to which the parties have consented because it is not exercising sovereign powers."[5] This misses the forest for a single tree; "to which the parties have consented" means the parties to the *lawsuit*, not somebody else.

*Self* does not say "the State was exercising its eminent domain powers" in that case; it says just the opposite. The Supreme Court held that a taking occurs "even if the government mistakenly believes that it has a legal right to do so *apart from its power of eminent domain*."[6] Whether Curadev's claims are true or not, the test here is not whether "the government had a particular 'impetus' or mindset" regarding whether its intentional taking of property for public use was permissible…. The point of a constitutional action for inverse condemnation is to allow private property owners to obtain compensation" for property taken "without any valid legal basis *other than* eminent domain."[7] Today's opinion is unmoored from Texas precedent.

I concur with the Court's judgment that the trial court did not err in dismissing

---

[3]     *Id.* at 30, 32.

[4]     *Id.* at 29–30.

[5]     *Id.* at 27.

[6]     *Id*. at 29 (emphasis added).

[7]     *Id.* at 30 (emphasis added). *State v. Holland* does not hold that absence of an express contract between the plaintiff and the government is immaterial. The patentholder there controlled the plaintiff entities entirely and personally handled all contacts and services required of them, so the State acted "under color of" its contracts with those affiliates. 221 S.W.3d 639, 644 (Tex. 2007). Southwestern had no colorable contract with Curadev or any of its affiliates.

Curadev's tort and statutory claims, as well as its claims against Southwestern's employees, Drs. Bai and Zhang. But I dissent from the Court's failure to follow the Supreme Court's detailed analysis in *Self*. Southwestern may not have intended to take intellectual property that belonged to Curadev, as it was apparently unaware of Curadev's interest. But as this lawsuit demonstrates, Southwestern certainly did and does intend to use, publish, and profit from discoveries arising from its contract with Takeda to the exclusion of any rights or claims by Curadev. That Southwestern used intellectual property it may have believed belonged to Takeda does not bar a takings claim if that property proves to have belonged to Curadev. To the extent the Court holds otherwise, I respectfully dissent.

/s/ Scott A. Brister
Scott A. Brister
Chief Justice

Before Chief Justice Brister and Justices Field and Farris.